1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   HARRIET STRICKLEN,                    No.  2:16-cv-00805-TLN GGH PS

12              Plaintiff,

13         v.                              FINDINGS AND RECOMMENDATIONS

14   JOHNSON & JOHNSON, et al.,

15              Defendants.

16

17

18         Plaintiff is proceeding in this action pro se and in forma pauperis.  Previously pending on

19   this court's law and motion calendar for October 6, 2016, was defendants Johnson & Johnson and

20   Alza Corporation's motion to dismiss, filed June 17, 2016.[1]  Plaintiff appeared in pro se.

21   Defendants appeared telephonically through counsel E. Joseph Connaughton.  Having reviewed

22   all filings in support of and in opposition to the motion, the undersigned now issues the following

23   findings and recommendations.

24   BACKGROUND

25         According to the complaint, filed April 19, 2016, plaintiff was employed at (but not by)

26   _____

27   [1]  The motion was originally noticed before the district judge, then re-noticed before the
     magistrate judge.  This case was then related to Stricklen v. Kelly Services, No. 2:16-cv-0804 and
     reassigned to the undersigned on August 9, 2016.  It was thereafter rescheduled for hearing before
28   the undersigned.

                                          1

Johnson & Johnson[2] ("J&J") from January 18, 2016 through March 23, 2016, when she was terminated.  The complaint avers that plaintiff "was hired as a salaried employee of Kelly Services ("Kelly").[3]  ECF No. 1 at 8.  She alleges that beginning with the interview on December 8, 2015, conducted by John Evers (a Kelly Services employee, see infra), she suffered discrimination, retaliation, unequal terms and conditions of employment, hostile work environment, and wrongful termination, until "the present."  Plaintiff filed a claim with the Equal employment Opportunity Commission and received a Notice of Right to Sue.  Id. at 17.  Plaintiff seeks compensatory and punitive damages under Title VII for race discrimination, as well as an order requiring J&J to provide her with a consultant position for a minimum of two years.

The motion to dismiss is brought by defendants J&J and ALZA Corporation ("ALZA").  According to the motion to dismiss, ALZA is a wholly owned subsidiary of J&J, and states that by serving J&J, plaintiff has served ALZA.  Defendants also indicate that Janssen Supply Chain Division is a division of ALZA.  Mot. to Dismiss, ECF No. 6 at 2 n. 1.  Defendants move to dismiss for failure to state a claim on the basis that neither J&J nor ALZA was plaintiff's employer and Title VII only prohibits discrimination by employers.

DISCUSSION

I.      Rule 12(b)(6) - Failure to State a Claim

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

---

[2]  According to the motion to dismiss, plaintiff erroneously named the defendant Johnson & Johnson-Janssen; however, this entity is properly named Johnson & Johnson.
[3]  Kelly Services is the only defendant in the lead related case.

1   Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

2   factual content that allows the court to draw the reasonable inference that the defendant is liable

3   for the misconduct alleged."  Id.

4        In considering a motion to dismiss for failure to state a claim, the court accepts all of the

5   facts alleged in the complaint as true and construes them in the light most favorable to the

6   plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

7   however, required to accept as true conclusory allegations that are contradicted by documents

8   referred to in the complaint, and [the court does] not necessarily assume the truth of legal

9   conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at

10  1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

11  prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

12  to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

13  Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

14  Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

15  particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

16  & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

17  evaluating them under the standard announced in Iqbal).

18       In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

19  consider only allegations contained in the pleadings, exhibits attached to the complaint, and

20  matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506

21  F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not

22  consider a memorandum in opposition to a defendant's motion to dismiss to determine the

23  propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194,

24  1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding

25  whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir.

26  2003).

27       II.      Request for Judicial Notice

28       Defendants have filed a request for judicial notice, requesting that the court take notice of

3

1  the court record, including the complaint filed in the related case, <u>Stricklen v. Kelly Services</u>, No.

2  2:16-cv-0804 TLN GGH PS.  Defendants' request for judicial notice is granted pursuant to Fed.

3  R. Evid. 201, as a court may take judicial notice of its own records.  <u>United States v. Wilson</u>, 631

4  F.2d 118, 119 (9th Cir. 1980); <u>Valerio v. Boise Cascade Corp.</u>, 80 F.R.D. 626, 635 n. 1

5  (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126, 102 S.Ct. 976 (1981).

6          III.     Analysis

7          Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., makes it an unlawful

8  employment practice for an *employer* to "fail or refuse to hire or to discharge any individual, or

9  otherwise to discriminate against any individual with respect to his compensation, terms,

10  conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

11  national origin."  <u>Id.</u>, § 2000e–2(a)(1).  If the employer permits the work environment to be

12  permeated by hostility based on the emphasized protected categories, this hostile work

13  environment itself violates Title VII.  <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 66 (1986).

14          A suit for retaliation may be brought under Title VII which provides in part:

15              It shall be an unlawful employment practice for an employer to
16              discriminate against any of his employees ... because he has
                opposed any practice made an unlawful employment practice by
17              this subchapter, or because he has made a charge, testified, assisted,
                or participated in any manner in an investigation, proceeding, or
18              hearing under this subchapter.

19  42 U.S.C. § 2000e–3(a).

20          This section protects an employee or former employee from retaliation as a result of

21  engaging in activity protected by Title VII.  <u>Arnold v. U.S.</u>, 816 F.2d 1306, 1310 (9th Cir.1987);

22  <u>Richardson v. Restaurant Marketing Associates, Inc.</u>, 527 F.Supp. 690, 695 (N.D.Cal.1981).  In a

23  retaliation case, this circuit follows the general rule regarding proof as set forth in <u>McDonnell</u>

24  <u>Douglas</u>.  Thus: (1) plaintiff must establish a prima facie case which includes a sufficient nexus

25  such that one may infer the adverse action was taken because of engaging in the protected

26  activity; (2) defendant must then come forward with legitimate nondiscriminatory reasons for the

27  action; and (3) plaintiff has the final burden to show that the action was a pretext for retaliation.

28  <u>See</u> <u>Steiner v. Showboat Operating Co.</u>, 25 F.3d 1459, 1464–65 (9th Cir.1994).

4

1    Claims brought under Title VII of the Civil Rights Act must be administratively

2    exhausted.  Plaintiff must allege she received a right to sue letter from the EEOC.  An employee

3    plaintiff filing a complaint under Title VII has ninety days to file the complaint in federal court

4    after receipt of the EEOC's right to sue letter.  An EEOC charge must be filed within 180 days of

5    the last discriminatory act (or within 300 days in a state, such as California, which has its own

6    anti-discrimination laws and agency).  See 42 U.S.C. S 2000e–1.

7    Defendants argue that plaintiff was not employed by them and that she does not so allege.

8    They claim that the complaint in both this action and in the related action confirm that plaintiff

9    was employed and supervised by Kelly during the relevant time period; the employee who

10   allegedly discriminated against plaintiff was employed by Kelly; she was terminated by Kelly;

11   and plaintiff complained of the alleged discriminatory conduct only to Kelly.

12   In determining whether, under general common law rules, an individual is working in an

13   employer/employee relationship, courts consider a myriad of factors, including:

14
15   > The hiring party's right to control the manner and means by which
   > the product is accomplished… the skill required; the source of the
16   > instrumentalities and tools; the location of the work; the duration of
   > the relationship between the parties; whether the hiring party has
   > the right to assign additional projects to the hired party; the extent
17   > of the hired party's discretion over when and how long to work; the
   > method of payment; the hired party's role in hiring and paying
18   > assistants; whether the work is part of the regular business of the
   > hiring party; whether the hiring party is in business; the provision
   > of the employee benefits; and the tax treatment of the hired party.
19

20   Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989).  No one factor is

21   decisive in this inquiry: instead, all must be considered and weighed in the court's determination.

22   See Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 322-23 (1992).  Darden summed up

23   five factors as determinative:  "recruitment, training, duration, right to assign additional work, and

24   control over the relationship between worker and agency."  Vizcaino v. United States District

25   Court for the Western District of Washington, 173 F.3d 713, 723 (9th Cir. 1999).  The "keystone"

26   of the common law employment test is "the employer's direction and control of the person

27   rendering service."  Anderson v. Valspar Corp., 2013 WL 552001 at *18 (E.D. Cal. Feb. 12,

28   2013) (citation omitted).  See also Gallegos v. City of L.A., 308 F.3d 987, 992 (9th Cir.2002)

(noting that legal conclusions often depend on what the parties did, not how they characterized what they did).

More recently, the Ninth Circuit cases discussing this issue have been summarized in Doud v. Yellow Cab of Reno, Inc.:

> In *Murray v. Principal Financial Group, Inc.*, 613 F.3d 943 (9th Cir.2010), the Ninth Circuit was asked to determine independent contractor versus employee status in a case where the plaintiff alleged sex discrimination against his employer under Title VII. The Ninth Circuit noted that several tests had been utilized to make this determination, including: the "economic realities" test from *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir.1999), the "hybrid" common law test of *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir.1980), and the traditional common law agency test from *Darden. Murray*, 613 F.3d at 945. The Ninth Circuit clarified that "there is no functional difference between the three formulations," and even if there were, Darden's common law test is controlling. *Id.* Because Title VII defined "employee" in a circular manner, as it is defined in ERISA and the ADA, and the statute did not suggest that something other than common law agency principles should be applied, those principles also applied to construe "employee" in Title VII. *Id.* In 2008, the Ninth Circuit applied common law agency principles to determine whether a taxicab company's drivers were employees or independent contractors under the NLRA. *N.L.R.B. v. Friendly Cab Co., Inc.*, 512 F.3d 1090, 1096 (9th Cir.2008). While not brought under the ADA, it, along with other NLRB cases, are instructive insofar as they apply the same common law agency principles as will be utilized here to determine whether Mr. Doud was an employee or independent contractor. Friendly presents many factual similarities to this case, and as a result, the court refers to it with some frequency in its analysis. In applying the common law agency principles, Friendly confirmed that while "courts must look to the totality of the circumstances, '[t]he essential ingredient of the agency test is the extent of control exercised by the "employer". It rests primarily upon the amount of supervision that the putative employer has a right to exercise over the individual, particularly regarding the details of the work.'" *Id.* at 1096–97 (quoting *SIDA of Hawaii, Inc. v. NLRB*, 512 F.2d 354, 357 (9th Cir.1975)). The court must, however, "assess and weigh all of the incidents of the relationship with the understanding that no one factor is decisive ... and that '[i]t is the rare case where the various factors will point with unanimity in one direction or the other.'" *Id.* at 1097 (quoting *Merchants Home Delivery Serv., Inc. v. NLRB*, 580 F.2d 966, 973 (9th Cir.1978)). While some factors tipped in favor of finding independent contractor status, the Ninth Circuit ultimately upheld the National Labor Relations Board's (NLRB) conclusion that Friendly's drivers were employees as there was "substantial evidence in the record that Friendly exercise[d] significant control over the means and manner of its drivers' performance." *Id.*

Doud v. Yellow Cab of Reno, Inc., 96 F. Supp. 3d 1076, 1088–89 (D. Nev. 2015).

Where there is a triangular relationship between the worker, the temporary employment agency and its client, the Darden factors continue to apply.  Vizcaino, 173 F.3d at 724.  The court explained:

> We agree that the assessment of the triangular relationship between worker, temporary employment agency and client is not wholly congruent with the two-party relationship involving independent contractors.  In posing the question as the district court did, however, it set up a false dichotomy.  Even if for some purposes a worker is considered an employee of the agency, that would not preclude his status of common law employee of Microsoft.  The two are not mutually exclusive.  "[In the ] determination of whether a person is an employee… [courts look to] the usual common law factors."

Id. at 723 (citations omitted).  Based on this reasoning, the court concluded that the determination whether the temporary workers were employees would be based not on whether they were simply employees of a staffing agency, but on application of the Darden factors vis a vis their relationship with Microsoft, the client company.  Id. at 724.

In the present case, plaintiff alleges that because she managed the WorkSense (SM) program at ALZA, a corporation purchased by Johnson & Johnson-Janssen, she was an employee of J& J.  ECF No. 12.  Plaintiff argues that because ALZA was responsible for providing plaintiff with communication and training, she was an employee of ALZA and, thus, J & J.  Id. at 2.  Plaintiff further contends that because she worked at ALZA's Vacaville location, collaborated with ALZA employees, and relied on ALZA for resources to carry out professional duties, she was an ALZA employee.  Id.  She claims that J&J "cooperated with John Evers (a Kelly Services supervisor) by not providing me access to ARIBA for me to continue with work functions" and failed to provide telephone access until plaintiff's last week of employment, and that ALZA scheduled meetings deliberately to conflict with plaintiff's schedule and excluded her from updates.  ECF No. 1 at 8, ECF No. 12 at 2.  She also alleges that J&J "made changes to Kronos to prevent [her] from successfully running hours for termed temporary staff payroll."  ECF No. 1 at 9.

After evaluating the Reid factors, the undersigned finds these arguments unpersuasive.  In her complaint plaintiff admits, "I was hired as a salaried employee of Kelly Services.  My role was

Talent Solutions Manager, I managed the Worksense™ program at Johnson and Johnson, Janssen operating company." ECF No. 1 at 8. The complaint also states, "I was employed by Kelly Services from January 18, 2016 until March 23, 2016." Id. at 9. It is not until the opposition that plaintiff contends that she was employed by both Kelly and J&J through a "co-employer agreement," that she was equally supervised by Kelly and J&J, that both J&J and Kelly discriminated against her, that she complained to both J&J and Kelly, and that both J&J and Kelly terminated her. ECF No. 12-1 at 1-2.

There are allegations that J&J controlled some aspects of plaintiff's work: for example, it allegedly changed a Kronos program that prevented plaintiff from "successfully running time for termed temporary staff payroll." ECF No. 1 at 9. However, J&J's involvement was limited to providing facilities and resources in order for plaintiff to be able to carry out her job functions. Her duties, supervision and control were all provided by Kelly. The individuals who controlled plaintiff's hiring, compensation, termination and day to day activities were all Kelly employees. Her direct supervisor, John Evers, was also employed by Kelly as an operations lead. Id. Some of the comments allegedly made to plaintiff by Evers included: "it doesn't matter what I think, if I didn't consider someone may have something to say. Johnson and Johnson has a strong policy to comply with their diversity policy;" and "Johnson and Johnson requires that we hire under their minority and diversity agreement." Id. at 8. He allegedly said "Blackie" to her. Id. at 9. All of these alleged discriminatory comments as well as yelling and "aggressively talking down" to plaintiff were made by Evers, Kelly's employee. When she sought to complain about Mr. Evers's behavior, plaintiff contacted David Dolowich, Mr. Evers' supervisor and another Kelly employee. Id. at 10. Mr. Dolowich then forwarded plaintiff's complaint to Kelly Human Resource Manager Susan Medina. The complaint alleges that plaintiff was terminated by Evers, a Kelly employee. Id. Plaintiff's supervision and support was provided by Kelly, and not J & J, which was merely a contractor or client. Thus, the undersigned finds that plaintiff was not an employee of J & J or Alza.

At hearing, the undersigned tried to explore the allegations to determine if there were grounds for amendment; however, plaintiff's allegations of collaboration or collusion between

1   J&J and Kelly are merely conclusions, and without underlying facts to support these claims, there

2   is no basis for amendment of the complaint.[4]

3   CONCLUSION

4       Accordingly, IT IS HEREBY RECOMMENDED that:  Defendants' motion to dismiss,

5   filed June 17, 2016, (ECF No. 6), be granted; and this action be dismissed.  (Plaintiff has a related

6   action pending against Kelly Services which is ongoing).

7       These findings and recommendations are submitted to the United States District Judge

8   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen

9   (14) days after being served with these findings and recommendations, any party may file written

10   objections with the court and serve a copy on all parties.  Such a document should be captioned

11   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12   shall be served and filed within seven (7) days after service of the objections.  The parties are

13   advised that failure to file objections within the specified time may waive the right to appeal the

14   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15   Dated: October 11, 2016

16                               /s/ Gregory G. Hollows

17                   UNITED STATES MAGISTRATE JUDGE

18

19

20

21   GGH:076/Stricklen0805.mtd

22

23

24

25

26   [4]  Reasonable inferences of complicity between an employer and a third party company with
respect to discriminatory practices may be drawn, but the inferences have to be based on facts

27   which could reasonably lead to the inference.  Plaintiff's rendition of mundane logistical
difficulties allegedly occasioned by Johnson & Johnson do not lead to reasonable inferences of

28   complicity in discriminatory acts.